Filed in Open Court
08/29/2024
Skyler B. O'Hara
By M. Garrett
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

v.

BARRY CUMMINGS,

Defendant.

Case No. 2:23-cr-20069-DDC

# PLEA AGREEMENT

The United States of America, by and through Assistant United States Attorney Ryan J. Huschka, and Barry Cummings, the defendant, personally and by and through his counsel, David E. McDonald, hereby enter into the following Plea Agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count 2 of the Indictment charging a violation of 18 U.S.C. § 1341, that is, mail fraud. By entering into this Plea Agreement, the defendant admits to knowingly committing the offense, and to being guilty of the offense. The defendant understands that the maximum sentence which may be imposed as to Count 2 of the Indictment to which he has agreed to plead guilty is not more than twenty years of imprisonment, a $250,000 fine, three years of supervised release, restitution in the amount of $1,233,024, and a $100.00 mandatory special assessment.

2. **Factual Basis for the Guilty Plea.** The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

Company A provides products and services related to energy management and automation. Company A offered iRewards as part of a global incentive program focused on non-employee resellers, contractors and their salespeople. It was a type of special

performance incentive fund ("SPIF") that was common in the industry. The program was administered by third-party service provider HMI and allowed members to earn points by completing tasks or achieving specific results. Members could then redeem earned points for a wide range of rewards via the HMI online platform.

Points could be earned within two categories. The "Gamification" category rewarded members for answering daily quiz questions, watching training or product-related videos, and other non-sales activities. "Purchase" points could be earned by submitting invoice numbers to Company A and representing that the member sold certain Company A products.

Rewards available included airline vouchers, hotel stays, sports equipment, gift cards, and electronic devices such as iPhones and iPads. Individual rewards could have significant value, in some cases exceeding $5,000, for items such as a 77" OLED televisions. Each point redeemed within Company A's program resulted in a $0.02 USD charge to Company A. For example, a $1000 iPhone could be assigned a points-cost of 75,000 points. Company A would have been charged $1500.00 when the 75,000 points were awarded to a member.

In order to participate in the iRewards program, the individual or company had to accept the terms and agreements before entering the site. The program was only open and offered to full-time employees of a participating company. Once an individual was no longer a full-time employee, that person had 30 days to redeem the outstanding points, after which time the points expired and membership ceased.

During June 2020, Company A became aware of suspicious behavior in the iRewards program. It suspended the redemption of points until a more thorough review could be conducted.

The defendant was hired by a company based in Lenexa, Kansas, on March 6, 2017. The defendant enrolled in the iRewards program by accepting the terms and conditions to the site on May 4, 2017. The defendant was terminated in April 2018 for lack of production.

Company A's review revealed that the defendant had been submitted fraudulent iRewards claims during his employment at the Lenexa company and after his termination in March 2018, continuing until the program's suspension in June 2020. The significance and degree of fraudulent activity the defendant engaged in is demonstrated by the 5,543 sales claims he filed to earn 22.5 million points in 2019 alone. For all of North America, including the U.S. and Canada (consisting of 300 participants), 79.6 million total points were earned—more than 25 percent by the defendant. The rest of the world, composed of 84 countries (and 1,940 participants) earned 44.2 million points compared to the defendant's 22.5 million.

Out of the 27 invoices the defendant completed while working at the Lenexa company, none included transactions with Company A and, therefore, he would not have any invoices entitling him to sales points in the iRewards Program. The defendant had continually logged into the iRewards site and continued to claim and redeem points. For example, over a 12-hour period on November 23-24, 2018, the defendant submitted 834 fraudulent invoice claims, which resulted in him receiving more than 2.8 million points, and ultimately a loss to Company A of more than $56,000 for those claims alone. As another example, over less than a 24-hour-period from November 25-26, 2019, the defendant submitted 391 fraudulent invoice claims, which resulted in him receiving more than 1.4 million points, and a loss to

Company A of more than $29,000. The defendant continued to use the email address bcummings@[Lenexa company].com to log in, even though he was not employed at the Lenexa company.

The defendant was listed as the recipient of more than 2,000 rewards redemptions, with certain packages delivered to the defendant's residences in Merriam, Lenexa, or Olathe, Kansas. His partner, A.L., was listed as the recipient of more than 300 redeemed rewards, with certain packages shipped to the residential addresses in Kansas associated with the defendant.

**Loss Calculations**

The total intended loss to Company A based on the number of points the defendant earned from his fraudulent claims was $1,233,053.52. The defendant had a small balance of reward points when the program was shut down, so the actual loss was to Company A was slightly less, $1,233,024.

3. **Application of the Sentencing Guidelines.** The parties understand that the Court will apply the United States Sentencing Guidelines (Guidelines) to calculate the applicable sentence and may impose a sentence consistent with the Guidelines. The defendant agrees to waive all constitutional challenges to the validity of the Guidelines. The defendant understands and acknowledges that the Court will find, by a preponderance of the evidence, the facts used to determine the offense level, and in making its findings, that the Court may consider any reliable evidence, including hearsay. Nothing in this section prevents the parties from filing objections to the Presentence Report prepared by the United States Probation Office, or from arguing the application of specific sections of the Guidelines. The parties agree that the Court will determine the final Guideline range. The parties understand this Plea Agreement binds the parties only and does not bind the Court.

4. **Relevant Conduct.** The parties have agreed to the application of the Guidelines. Therefore, the defendant agrees that the conduct charged in any dismissed counts, as well as all other uncharged related criminal activity, will be considered as relevant conduct for purposes of calculating the offense level for the count of conviction, in accordance with United States Sentencing Guidelines (U.S.S.G.) § 1B1.3.

5. **Government's Agreements.** In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas agrees:

(a) to dismiss the remaining counts of the Indictment at the time of sentencing;

(b) to not file any additional charges against the defendant arising out of the facts forming the basis for the present Indictment;

(c) to recommend a sentence at the low end of the applicable Guideline range, and to allow the defendant to reserve the right to request a downward departure and/or a variance; and

(d) to recommend the defendant receive a two (2) level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. In addition, if his offense level is 16 or greater, prior to any reduction for acceptance of responsibility, and the Court finds he qualifies for a two-level reduction, the United States will move at the time of sentencing for an additional one-level reduction for acceptance of responsibility because he timely notified the government of his intention to enter a plea of guilty.

The United States' obligations under this Paragraph are contingent upon the defendant's continuing to manifest an acceptance of responsibility. If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct, the United States reserves the right to petition the Court for a hearing to determine if he has breached this Plea Agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this Plea Agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this Plea Agreement's terms, the United States shall not be bound by this Paragraph, and may pursue any additional charges

arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this Plea Agreement, he understands and agrees that all statements he made, any testimony he gave before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements he made subsequent to this Plea Agreement.

6. **Sentence to be Determined by the Court.** The defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot and has not made any promise or representation as to what sentence he will receive.

7. **Restitution.** The defendant knowingly and voluntarily agrees and consents to pay restitution pursuant to 18 U.S.C. § 3663(a)(3) for all losses caused by defendant's relevant conduct in this case, not just losses resulting from the counts of conviction, in *at least* the following amounts:

| **Victim:** | **Total Loss:** | **Agreed Restitution:** |
|---|---|---|
| Company A | $1,233,024 | $1,233,024 |

(a) The victim and amount shown in the above table reflect all currently identified victims and known loss amounts. In the event additional victims and/or losses are discovered after execution of this Plea Agreement but before sentencing, defendant agrees to pay restitution to the additional victims and/or in the additional amounts for all losses caused by defendant's relevant conduct in this case, and not only for the offense(s) of conviction, pursuant to 18 U.S.C. § 3663(a)(3) and/or 18 U.S.C. § 3663A(a)(3).

(b) Irrespective of any payments by other defendants that are ordered to be jointly and severally liable for restitution, defendant understands he is liable for the full amount of restitution

ordered until defendant has paid that amount in full or the victim's loss is repaid in full, whichever occurs first.

(c) Defendant acknowledges that the liability to pay restitution does not terminate until 20 years from entry of judgment or 20 years after defendant's release from imprisonment, whichever is later pursuant to 18 U.S.C. § 3613(b).

8. **Identification of Assets and Agreement Concerning Monetary Penalties.** In order to facilitate the collection of criminal monetary penalties, including restitution, fines, and assessments, to be imposed in connection with this case, defendant agrees as follows:

(a) Payments toward anticipated criminal monetary penalties made prior to sentencing will be held by the Court Clerk and then applied to the criminal monetary penalties following entry of the Judgment in a Criminal Case. If the amount paid prior to sentencing exceeds the amount ordered at sentencing, the United States Attorney's Office will request language to be included in the Judgment in a Criminal case to authorize the Court Clerk to refund any overpayment to defendant. Payments made prior to sentencing can be sent to the following address and should reference defendant's name and case number:

Clerk, U.S. District Court
401 N. Market, Room 204
Wichita, Kansas 67202

(b) Defendant agrees not to encumber, transfer, or dispose of any monies, property, or assets under defendant's custody or control of more than $2,000 in value, without written approval from the United States Attorney's Office.

(c) Within 30 days of any request by the United States Attorney's Office, defendant agrees to execute a financial statement and provide supporting documentation. Defendant expressly authorizes the United States to obtain a credit report before sentencing. Further, defendant agrees to execute authorizations for the release of all financial information requested by the United States.

(d) Defendant agrees the United States Attorney's Office may, pursuant to F.R.Civ.P. Rule 45, subpoena any records it deems relevant to conduct a full financial investigation of defendant's assets prior to sentencing.

(e) Defendant authorizes the United States to file a Notice of Lis Pendens prior to judgment on any real property in which defendant holds an ownership interest.

(f) Defendant agrees that all information defendant provides to the United States Probation Office or independently obtained by the United States Probation Office may be provided to the United States Attorney's Office. Likewise, all information defendant provides to the United States Attorney's Office or

independently obtained by the United States Attorney's Office in the course of its financial investigation of defendant may be provided to the United States Probation Office.

(g) All monetary penalties (including any fine, restitution, assessment, or forfeiture judgment) imposed by the Court, will be due and payable immediately and subject to immediate enforcement by the United States. Any payment schedule set by the Court is a minimum schedule of payment and not a limitation on the United States to enforce the judgment.

(h) Defendant waives any requirement for demand of payment on any criminal monetary penalties or forfeiture judgment entered by this Court.

(i) Defendant waives the administrative requirements of the Treasury Offset Program, including the requirement of default.

(j) If defendant posted funds as security for defendant's appearance in this case, the defendant authorizes the Court to release the funds posted the Court Clerk to be applied to the criminal monetary impositions at the time of sentencing.

(k) Defendant understands he has an obligation to notify the court and the United States Attorney's Office of any material change in defendant's economic circumstances that might affect defendant's ability to pay restitution pursuant to 18 U.S.C. § 3664(k).

(l) Defendant understands that failure to comply with the provisions of this section may constitute a breach of this plea agreement, as outlined in Paragraph 5, above.

9. **Withdrawal of Plea Not Permitted.** The defendant understands that if the Court accepts this Plea Agreement, but imposes a sentence with which he does not agree, he will not be permitted to withdraw his guilty plea.

10. **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against him at the time of sentencing. The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing. The defendant has the burden of establishing an inability to pay the required special assessment. The parties acknowledge that if the Court finds the defendant is without resources to pay the special

assessment at the time of sentencing, the Court may allow payment during his period of incarceration.

11. **Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, including assessments and restitution, as well as the length and conditions of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords him the right to appeal the conviction and sentence imposed. The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court departs or varies upwards from the sentencing Guideline range that the Court determines to be applicable. However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). Notwithstanding the foregoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

12. **FOIA and Privacy Act Waiver.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552.

The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

13. **Waiver of Claim for Attorney's Fees.** The defendant waives all claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

14. **Full Disclosure by United States.** The defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include information concerning his background, character, and conduct, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he is pleading guilty. The United States may respond to comments he or his attorney makes, or to positions he or his attorney takes, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this Plea Agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

15. **Deportation Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which he is pleading guilty. (Because defendant is pleading guilty to wire fraud, removal is presumptively mandatory.) Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty, regardless of any immigration

consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

16. **Parties to the Agreement.** The defendant understands this Plea Agreement binds only him and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

17. **Voluntariness of Guilty Plea.** The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with his attorney and he is fully satisfied with the advice and representation his attorney provided. Further, the defendant acknowledges that he has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and unless subsequently supplemented in writing with the joint approval of the parties, this Plea Agreement embodies each and every term of the agreement between the parties. The defendant acknowledges that he is entering into this Plea Agreement and is pleading guilty because he is guilty. He further acknowledges that he is entering his guilty plea freely, voluntarily, and knowingly.

*/s/ Ryan J. Huschka* Date: 7/18/2024
Ryan J. Huschka
Assistant United States Attorney

*/s/ D. Christopher Oakley* Date: 7/18/2024
D. Christoper Oakley
Assistant United States Attorney
Supervisor

[signature] Date: 8/29/2024
Barry Cummings
Defendant

David E. McDonald
Counsel for defendant

Date: 8/29/2024